Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

Dated: September 27th, 2019

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

| | |
|---|---|
| IN RE:<br><br>STOLLINGS TRUCKING COMPANY, INC.,<br><br>Debtor. | CASE NO. 2:15-bk-20624<br><br>CHAPTER 11<br><br><br><br>JUDGE FRANK W. VOLK |
| STOLLINGS TRUCKING COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE OF<br>THE UNITED STATES OF AMERICA and<br>WEST VIRGINIA STATE TAX DEPARTMENT,<br><br>Creditors/Defendants. | ADVERSARY PROCEEDING NO.<br>2:18-ap-02010 |

**MEMORANDUM OPINION AND ORDER**

Pending are Motions by Stollings Trucking Company, Inc. ("Stollings"), the Internal Revenue Service ("IRS"), and the West Virginia State Tax Department ("WVSTD") for Summary Judgment [AP Dckt.[1] 37, 42, 44]. In this adversary proceeding, Stollings seeks to surcharge legal and professional expenses associated with its transfer of certain mining permits against the IRS and the WVSTD (jointly, "the Taxing Authorities").

This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court is vested with subject-matter jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

---

[1] Citations to "AP Dckt." refer to filings in the Adversary Proceeding; citations to "BK Dckt." refer to filings in the Bankruptcy Proceeding.

**I.**

This proceeding arises out of a Chapter 11 bankruptcy case filed by debtor Stollings. The material facts are as follows.

Stollings, a company which had formerly hauled and mined coal in Logan County was the holder of several mining permits and the owner of various pieces of related mining equipment. Pursuant to West Virginia and federal law, Stollings was required to post bonds to guarantee that the land would be reclaimed after mining was completed. The bonds would not be released until the reclamation was completed. If the reclamation work was not performed, the bonds could be forfeited, and the state could assess additional fines and penalties against Stollings. Stollings posted several million dollars in bonds to cover the costs of reclamation on the various mining sites. Over several years, the Taxing Authorities had properly filed numerous tax liens – including attempts to collect fines and unpaid taxes – in Logan County. These liens attached to any property belonging to Stollings. Specifically, the IRS held liens amounting to $690,081; the WVSTD held liens amounting to $1,255,826. In addition, the Estate was also subject to over three million dollars in unsecured claims.

Stollings filed a Chapter 11 proceeding on December 7, 2015. Several years into the process, on May 3, 2018, Stollings moved the Court for permission to assign the mining permits to Condor Holdings, LLC ("Condor") [BK Dckt. 573]. The motion proposed that Condor would become responsible for all reclamation obligations associated with the permits upon transfer and, in exchange, Stollings would retain $225,000 from the bonds it had previously posted "for the benefit of the estate." [BK Dckt. 573 at 2]. The remainder of the bonds would be cashed out, transferred, and reposted by the new permitholder, Condor. In support of its motion, Stollings stated that so long as it remained the holder of the permits, state and federal law required it "to

conduct all necessary reclamation activities on the permits," regardless of the fact that it was no longer an operational business and had sold its equipment [BK Dckt. 573 at 3]. Due to these limitations (and a general lack of funds to pay for reclamation), Stollings had performed "only limited reclamation activities" and incurred numerous post-petition fines and penalties as a result. If the failure to perform adequate reclamation continued, Stollings' permits could be canceled and the required reclamation bonds forfeited by the state. Based on the above, Stollings stated, the assignment of the permits to Condor was "in the best interest of the Debtor, its creditors and its estate," because any other course of action could result in the forfeiture of the bonds *and* the revocation of the permits, as well as the accrual of additional fines and penalties [BK Dckt. 573 at 6].

On June 11, 2018, the Court granted Stollings' motion [BK Dckt. 594]. Shortly thereafter, on June 14, 2018, Stollings submitted an Amended Combined Disclosure Statement [BK Dckt. 598]. Therein, Stollings stated its intention to seek surcharge against the Taxing Authorities to recover its expenses – fees paid to attorneys and to a professional consultant who assessed the costs of reclamation – associated with the assignment of the permits in an adversary proceeding. Stollings proposed that its costs be reimbursed from the $225,000 obtained from the assignment of the permits.

On June 19, 2018, Stollings initiated this adversary proceeding. Stollings sought, pursuant to 11 U.S.C. § 506(c) and in accordance with its proposed disclosure statement, to surcharge its expenses associated with the permit assignment to the Taxing Authorities. Specifically, Stollings contended that the work associated with the permit assignment benefitted the Taxing Authorities and is therefore subject to surcharge under § 506(c).

On January 18, 2019, Stollings moved for summary judgment on the grounds that there is no genuine issue of material fact and that it is entitled to surcharge under § 506(c).[2] The WVSTD likewise moved for summary judgment on January 29, 2019, and the IRS followed suit on January 30, 2019. Both argue that there is no genuine issue of material fact and that Stollings is not entitled to surcharge as a matter of law. The matter is now ready for adjudication.

## II.

**A.     Governing Standards**

### 1. Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court "must view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot

---

[2] Stollings initially presented a second ground for summary judgment. That ground involved the Taxing Authorities' entitlement to post-petition insurance proceeds based upon the equities of the case doctrine. That second ground for summary judgment was withdrawn.

weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

### 2. Surcharge

As a general rule, a trustee or debtor in possession ("DIP") must pay administrative expenses – which include "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A) – from the unencumbered assets of the estate, not from secured collateral. *See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir. 1994). Section 506(c) of the Bankruptcy Code codifies an exception to this general rule:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c). The United States Court of Appeals for the Fourth Circuit, like its sister circuits, has interpreted this exception narrowly and emphasized that "§ 506(c) should not be read to provide a means of wealth transfer from secured to unsecured creditors." *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 210 (4th Cir. 1997) (internal quotation marks omitted); *see also C.I.T. Corp. v. A & A Printing, Inc.*, 70 B.R. 878, 881 (M.D.N.C. 1987) ("Section 506(c) . . . attempts to return to the secured creditor the portion of the asset pie he would have received had there been no bankruptcy, and no larger."). "Section 506(c) was not intended as a substitute for recovery of normal administrative expenses from the debtor's

estate." *Fed. Deposit Ins. Corp. v. Jenson (In re Jenson)*, 980 F.2d 1254, 1260 (9th Cir. 1992). Thus, in order to "prevent [§] 506(c) from swallowing the principle that that general administrative costs must be borne by the estate," *In re Domistyle, Inc.*, 811 F.3d 691, 697 (5th Cir. 2015), the "[c]ourts have narrowly construed § 506(c) to encompass only those expenses that are specifically incurred for the express purpose of ensuring that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt." *In re C.S. Assocs.*, 29 F.3d 903, 907 (3d Cir. 1994) (internal quotation marks omitted); *see also In re Domistyle*, 811 F.3d at 697 (discussing development of requirement that expenses be incurred "primarily for the benefit of the secured creditor"); *In re JKJ Chevrolet*, 26 F.3d at 483.

Put simply, a trustee or DIP can recover costs from a secured creditor spent to preserve "the very property (collateral) securing the debt." *In re K & L Lakeland*, 128 F.3d at 207 (internal quotation marks omitted). This exception codifies the proposition that a secured creditor who solely and directly benefits from certain expenses should bear the costs of those expenses, rather than receive "a windfall . . . at the expense of the estate." *In re JKJ Chevrolet*, 26 F.3d at 483. The trustee or DIP bears the burden of establishing that surcharge is proper under § 506(c) and must prove three elements. First, that the expense "was incurred primarily to protect or preserve [the secured creditor's] collateral." *In re K & L Lakeland*, 128 F.3d at 207; *see also In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2d Cir. 1985) ("to warrant [§] 506(c) recovery . . . [the claimant] must show that its funds were expended primarily for the benefit of the creditor"); *In re Parque Forestal, Inc.*, 949 F.2d 504, 512 (1st Cir. 1991) (claimant must demonstrate expenses were made for the primary benefit of the secured creditor), *overruled on other grounds by Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 350 U.S. 1 (2000); *D & M Land Co. v. Branch Banking & Trust Co.*, 431 B.R. 133, 137 (E.D.N.C. 2010) (expense must be "incurred in preserving

6

or disposing of the debtor's property"). Second, that the expense was reasonable and necessary. *See* 11 U.S.C. § 506(c). And third, that the expense provided a "direct and quantifiable benefit" to the secured creditor. *In re K & L Lakeland*, 128 F.3d at 207.

As to the final element, "[m]erely providing *some* benefit to the debtor . . . does not satisfy § 506(c)'s requirement that the benefit be direct and inure to the secured creditor for the preservation or disposition of its collateral." *In re K & L Lakeland*, 128 F.3d at 211 (internal quotation marks omitted) (emphasis in original); *see also In re Flagstaff Foodservice*, 762 F.2d at 12 ("A debtor does not meet this burden of proof by suggesting possible or hypothetical benefits."); *In re Sonoma V.*, 24 B.R. 600, 603 (B.A.P. 9th Cir. 1982) ("the secured creditor may be charged for acts which directly protect or preserve the collateral in a specific and limited sense").

**B. Analysis**

As an initial matter, there is no dispute that Stollings' surcharge claim is "limited to work done in connection with transfer of the reclamation bonds." [AP Dckt. 44-2 at 2]. Stollings argues that 11 U.S.C. § 506(c) allows the Court to surcharge a secured creditor with administrative expenses incurred by professionals, if the professionals' actions benefited the creditor and saved them expenses which they otherwise would have incurred. The Taxing Authorities argue that surcharge is improper because the transfer of the permits was for the benefit of the entire estate and any benefit to the Taxing Authorities was simply incidental. Further, the IRS argues, the Taxing Authorities did not incur a direct non-financial benefit as the result of the transfer expenses, because neither the IRS nor the WVSTD had any legal duties that were discharged or satisfied by the transfer. Stollings, the IRS asserts, had the sole duty with regard to reclamation and any benefit to the Taxing Authorities was incidental to the primary benefit to Stollings. In reply, Stollings argues that the Taxing Authorities benefitted from the transfer of the permits because their

7

recovery would have been significantly limited but for the transfer, and thus they should bear the cost rather than the Estate.

Inasmuch as Stollings has failed to discharge its burden to prove that the expenses were incurred for the primary benefit of the Taxing Authorities and a direct and non-incidental benefit resulted, the Court need not engage in an exhaustive analysis to conclude that surcharge is inappropriate. Stollings' burden would have been discharged with a showing that the Taxing Authorities received more than just an incidental benefit. Stollings is charged with demonstrating that it "expend[ed] the funds primarily to benefit the secured creditor, who . . . in fact *directly* benefitted from the expenditure." *In re Parque Forestal*, 949 F.2d at 512 (alteration in original) (emphasis added) (internal quotation marks omitted); *see also In re K & L Lakeland*, 128 F.3d at 211 (emphasis added) (the benefit must "inure to the secured creditor *for the preservation or disposition of its collateral*").

Indeed, the record is clear that any benefit to the Taxing Authorities was incidental to the benefit Stollings sought. Specifically, Stollings undertook the assignment of the permits because it could no longer perform its reclamation obligations and was incurring further fines and penalties as a result. Absent the transfer, Stollings would have remained obligated by state and federal law to conduct reclamation work or risk fines, penalties or even the forfeiture of the reclamation bonds. Stollings, as the permit holder, bore the sole responsibility to comply with state and federal environmental laws and, through the assignment of the mining permits to Condor, Stollings discharged this duty. While it is true, as Stollings argues in reply, that without the transfer of the bonds "then the claims of the [T]axing [A]uthorities would likely have been swamped by unpaid reclamation liabilities," [AP Dckt. 50 at 4], Stollings fails to recognize that a benefit may be significant, but still be incidental to a primary benefit. As Stollings itself stated in its motion

8

seeking Court approval of the assignment, the transfer of the permits was for the benefit of itself, all creditors, and the entire estate [BK Dckt. 573 at 6]. Any benefit to the Taxing Authorities was incidental to the benefit Stollings sought, and thus does not "satisfy § 506(c)'s requirement that the benefit be direct *and inure* to the secured creditor *for* the preservation or disposition of its collateral." *In re K & L Lakeland*, 128 F.3d at 211 (emphases added) (internal quotation mark omitted); *see also In re Parque Forestal*, 949 F.2d at 512; *In re Grimland*, 243 F.3d 228, 232 (5th Cir. 2001) ("indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtor or other creditors").

Unlike the ordinary case where a trustee seeks to recover specific expenses – for example, storage of assets – that secure the claim of a creditor and only serve to benefit that creditor, Stollings is attempting to surcharge the IRS and the WVSTD, entities that have a statutory interest in the *entire* estate. Section 506(c) speaks directly to the property securing a creditor's claim. But in this case, there is no collateral securing the Taxing Authorities' interests, only a statutory lien on all property. *See, e.g., In re Domistyle*, 811 F.3d at 698 (discussing connections made by courts between the expenses and specific collateral). The Taxing Authorities did not have a specific interest in the mining permits or the reclamation bonds, but rather in any property of Stollings used to satisfy the tax liens. The mere fact that creditors – including the Taxing Authorities – benefit from money being added to the estate and creditors lose when money is taken away from the estate does not render any administrative expense incurred during liquidation or reorganization chargeable against a creditor with a tax lien attaching to any property of the debtor.

If we were to reach the opposite conclusion, any reasonable and necessary cost could be surcharged against creditors with an interest in the proceeds of an estate generally. Such a result would obliterate § 506(c)'s status as a narrowly construed exception. *See, e.g., In re*

9

*Jenson*, 980 F.2d at 1260 ("Section 506(c) was not intended as a substitute for recovery of normal administrative expenses from the debtor's estate."); *In re C.S. Assocs.*, 29 F.3d at 907 (internal quotation marks omitted) ("Section 506(c) was not intended to encompass ordinary administrative expenses that are attributable to the general operation and dissolution of an estate in bankruptcy."). In a case like this, where the estate's liabilities outweigh its assets, taking such an approach would turn the exception into the rule. And, as a practical matter, the result counseled by Stollings could discourage parties like the Taxing Authorities from cooperating with trustees and debtors in bankruptcy proceedings.

Accordingly, because Stollings has failed to prove a direct and non-incidental benefit that inured to the Taxing Authorities for the preservation or disposal of their collateral, Stollings is not entitled to the requested surcharge.

### III.

Based upon the foregoing discussion, **IT IS ORDERED** as follows in this action:

1. That the IRS and WVSTD's motions for summary judgment [AP Dckt. 42, 44] be, and hereby are, **GRANTED**.
2. That Stollings' motion for summary judgment [AP Dckt. 37] be, and hereby is, **DENIED**.